**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-1314
_____

UNITED STATES OF AMERICA

v.

SANDRO G. ZHININ,
                                   Appellant
_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 5-17-cr-000383-001)
District Judge: Honorable Edward G. Smith
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
December 13, 2019
_____

Before: RESTREPO, ROTH, and FISHER, *Circuit Judges*.

(Filed:  May 22, 2020)
_____

OPINION[*]
_____

_____

   [*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

RESTREPO, *Circuit Judge*.

Appellant Sandro G. Zhinin pleaded guilty to aggravated sexual assault of a minor and to possession and production of child pornography. The District Court sentenced him to life imprisonment. Zhinin argues that the Court relied on improper grounds in support of his sentence and failed to adequately address his arguments. We disagree and will affirm the District Court's sentence.

**I.**

Zhinin began communicating with an eleven-year-old female, Jane Doe, on several social networking applications, including Skype and Snapchat. On March 4, 2017, he traveled from his home in Brooklyn, New York, to meet Doe in Northampton County, Pennsylvania. He picked her up, drove her to a Red Roof Inn in Hanover Township, Pennsylvania, and then had sex with her. One week later, he arranged another sexual encounter with Doe at a Scottish Inn in Hanover.

During the second encounter, Doe's parents contacted law enforcement to report their child missing. After she returned home, Doe reported the two encounters to law enforcement. In coordination with Doe and her parents, the Pennsylvania State Police communicated with Zhinin to arrange a third encounter. On March 25, 2017, Zhinin again traveled from Brooklyn to Northampton County to pick up Doe at a park. Law enforcement arrested him once he arrived. The officers recovered a Red Roof Inn keycard from Zhinin along with an iPad containing a nineteen-minute recording of the second encounter.

On July 20, 2017, Zhinin was indicted for three counts of aggravated sexual

2

assault of a minor, three counts of traveling with the intent to engage in illicit sexual conduct, one count of producing child pornography, and one count of possessing child pornography. He pleaded guilty to aggravated sexual assault, possession of child pornography, and production of child pornography. The District Court sentenced him to life imprisonment for aggravated sexual assault,[1] to be served concurrently with terms of 240 months' imprisonment for each child pornography count.[2] Zhinin filed a notice of appeal on February 4, 2019.

## II.

The District Court had jurisdiction over the criminal proceedings against Zhinin pursuant to 18 U.S.C. § 3231. We have jurisdiction to review the District Court's sentence. 28 U.S.C. § 1291; 18 U.S.C. § 3742.

A district court follows a three-step process at sentencing. The court calculates the applicable sentencing range under the Guidelines, rules on any motions to depart from the Guidelines, and finally considers the 18 U.S.C. § 3553(a) factors to fashion an appropriate sentence, "which may vary from the sentencing range called for by the Guidelines." *United States v. Levinson*, 543 F.3d 190, 194–95 (3d Cir. 2008). Section 3553(a) requires district courts to consider factors such as the need to protect the public

---

[1] The mandatory minimum for aggravated sexual assault of a minor is 30 years' imprisonment and the maximum term is life. Based on Zhinin's overall offense calculation of 43, his recommended Guidelines range is life in prison.

[2] The sentence is also concurrent with the twenty to forty years' imprisonment the Court of Common Pleas of Lehigh County imposed for the instant conduct.

from the defendant, the Guidelines sentencing range, and "the need to avoid unwarranted sentence disparities" among similarly situated defendants.

We review criminal sentences for reasonableness, placing the burden on the party challenging the sentence. *United States v. Tomko*, 562 F.3d 558, 567 (3d Cir. 2009) (en banc). The first step in our review is determining whether the district court committed procedural error, such as "failing to consider the § 3553(a) factors . . . or failing to adequately explain the chosen sentence." *Id.* (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)). We affirm a procedurally sound sentence "unless no reasonable sentencing court would have imposed the same sentence on that particular defendant for the reasons the district court provided." *Id.* at 568. At each step, we employ an abuse-of-discretion standard. *Id.* at 567. "That we may ourselves have imposed a sentence different from that of the district court . . . is no basis to overturn the judgment." *United States v. Schweitzer*, 454 F.3d 197, 204 (3d Cir. 2006).

## III.

Zhinin challenges his sentence on procedural and substantive grounds. The Government counters that he did not preserve his procedural error argument at sentencing. We will begin our analysis there.

## A.

Under Federal Rule of Criminal Procedure 51(b), a party preserves a claim "by informing the court—when the court ruling or order is made or sought—of the . . . party's objection to the court's action and the grounds for that objection." There is no requirement that the party "use any particular language" as the pertinent consideration is

4

"whether the claimed error was 'brought to the court's attention.'" *Holguin-Hernandez v. United States*, 140 S. Ct. 762, 766 (2020) (quoting Fed. R. Crim. P. 52(b)).

The Government argues that Zhinin's trial counsel failed to preserve his procedural error claim because her "token objection" failed to identify specific arguments the District Court allegedly did not consider. Appellee's Br. 22. After imposing the sentence, the District Court asked counsel if there were any additional issues that needed to be addressed. She responded, "[W]e are lodging an objection to this Court's imposition of the sentence and argue that it has not considered the arguments of defense counsel, both in the pleadings and here in court today," citing *United States v. Flores-Mejia*, 759 F.3d 253 (3d Cir. 2014) (en banc). J.A. 125. In *Flores-Mejia*, we held that an "error of failure to give meaningful consideration must be brought to the district court's attention through an objection." 759 F.3d at 256. The objection by Zhinin's counsel provided sufficient notice to the District Court of the alleged procedural error. Thus, Zhinin preserved his procedural argument on appeal.[3]

---

[3] The Government suggests that the Federal Community Defender Office for the Eastern District of Pennsylvania routinely cites *Flores-Mejia* in bad faith to preserve any issue on appeal. *See* Appellee's Br. 22 n.6. There is no merit to this allegation. Rather than requiring an itemized list of each procedural error, we made clear in *Flores-Mejia* that a party intending to challenge a sentence must object following its imposition to give the sentencing court "the opportunity to rectify any error." 759 F.3d at 256. Counsel satisfied this requirement here. Moreover, the Government's assertion is misplaced given counsel's obligation to zealously advocate on behalf of her client. Model Rules of Prof'l Conduct r. 1.3 cmt. 1 (Am. Bar Ass'n 2019) ("A lawyer must also act with commitment and dedication to the interests of the client and with zeal in advocacy upon the client's behalf.").

**B.**

We now consider whether the District Court procedurally erred when it sentenced Zhinin to life in prison. Zhinin argues that the District Court failed to respond to his unwarranted disparity argument and the forensic psychologist's report. The sentencing court "must *acknowledge and respond to* any properly presented sentencing argument which has colorable legal merit and a factual basis." *United States v. Ausburn*, 502 F.3d 313, 329 (3d Cir. 2007) (emphasis added). The fact that a district court could have provided a more detailed explanation is insufficient to overturn a sentence. *See Rita v. United States*, 551 U.S. 338, 359 (2007) (stating that the "context and the record [made] clear" the district court's rationale, even though "the judge [could] have said more"). For instance, "[w]hen a judge applies a sentence within the Guidelines range, he or she often does not need to provide a lengthy explanation." *Chavez-Meza v. United States*, 138 S. Ct. 1959, 1964 (2018).

In his sentencing memorandum, Zhinin requested thirty years' imprisonment. He attached a report prepared by Dr. Frank M. Dattilio based on a psychological evaluation and sexual risk assessment. Focusing on recidivism, the report concluded that Zhinin was unlikely to reoffend because he is not sexually attracted to minors. The District Court acknowledged the report during the sentencing hearing. *See* J.A. 113 ("[T]here was, of course, Dr. Dattilio's report and I've considered that report carefully."). After discussing the two sexual encounters and the third attempted encounter, the Court concluded that Zhinin is "likely to commit another offense" if released from prison. J.A.

117–20. The context makes clear that the District Court's recidivism discussion took into account Dr. Dattilio's forensic report.

Zhinin also filed a supplemental sentencing memorandum in which he attached "a chart of thirty other cases in which defendants had committed either comparable or worse offenses . . . and received sentences of less than life." Appellant's Br. 6. The District Court also acknowledged the chart during the sentencing hearing. *See* J.A. 113 (noting that "attached to the supplemental memorandum is a chart of other sex offenses" that "did not result in life sentences"). Because the District Court sentenced Zhinin within the Guidelines, it was not required to extensively respond to the chart. *See Gall*, 552 U.S. at 54 (stating that the district court "necessarily gave significant weight and consideration to the need to avoid unwarranted disparities" by imposing a sentence within the Guidelines). Furthermore, nearly half of the sentences detailed in the chart were within or above the Guidelines. The District Court's explanation of Zhinin's sentence was sufficient, and it was not required to specifically address the cases listed in the chart.

Zhinin next argues that the District Court procedurally erred when it concluded that he would likely reoffend based on "an unmitigable evilness within you" as a "deviant, sexual predator." J.A. 120. He relies on two cases in support of his argument. In *United States v. Olhovsky*, this Court vacated a sentence in which the district court rejected the reports of three defense experts based on its view that the defendant was a "pedophile monster." 562 F.3d 530, 547 (3d Cir. 2009). Similarly, in *United States v. Cossey*, the Second Circuit vacated a sentence in which "the district court rejected two separate psychological evaluations" based on its unfounded view that the defendant had a

7

to-be-discovered gene making him likely to reoffend.  632 F.3d 82, 87 (2d Cir. 2011) (per curiam).

We disagree with Zhinin's contention that the District Court's statements resulted in a procedural error.  The Court described Zhinin as a "deviant, sexual predator" with an "unmitigable evilness" in the context of addressing whether Zhinin was likely to reoffend based on his repeated sexual encounters with an eleven-year-old girl.  *See* J.A. 117–20. The District Court's concerns regarding recidivism are founded in the record.  The Government's sentencing memorandum details sexually suggestive communications Zhinin had with two other minors.  Unlike *Olhovsky* and *Cossey* where the sentences were rooted in the trial courts' unfounded opinions, the District Court did not disregard Zhinin's arguments and its conclusions are based on the record.

### C.

Lastly, Zhinin argues that no reasonable court would have sentenced him to life in prison.  We disagree.

When reviewing a sentence for substantive reasonableness, we "take into account the totality of the circumstances, including the extent of any variance from the Guidelines range."  *Gall*, 552 U.S. at 51; *see also United States v. Olfano*, 503 F.3d 240, 245 (3d Cir. 2007) (recognizing that sentences "within the Guidelines range are more likely to be reasonable than those that fall outside this range").  Zhinin's life sentence is within the Guidelines, and he does not challenge the Guidelines range itself.  Although we may have imposed a different sentence had we reviewed the evidence de novo, the District Court did not abuse its discretion when it sentenced Zhinin to life.

8

**IV.**

For the foregoing reasons, we will affirm the District Court's judgment sentencing Zhinin to life imprisonment.